# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRITTANY LYNN TOBEY, individually; and BRITTANY LYNN TOBEY on behalf of D.W.T., a minor child, and T.J.T., a minor child,<br><br>  Plaintiffs,<br><br>v.<br><br>STATE of OKLAHOMA, *ex. rel.*, DEPARTMENT of HUMAN SERVICES; TAMMY LEE, individually; DAWNEEIA MARLEEN TOBEY, individually; and MARIA C. TOBEY,<br><br>  Defendants. | Case No. 25-cv-00247-SH |

## OPINION AND ORDER

This case involves claims brought by a mother and her children following the children's removal from the mother's home by a state employee and their placement with other relatives. The employee and an aunt have filed motions to dismiss.[1] The Court finds the mother has failed to state any claims under the child-stealing statute or for conspiracy, and the children have failed to state any conspiracy claims against their aunt. Those claims will be dismissed. The children have, however, stated a claim against the state employee for unreasonable seizure under Fourth Amendment and in violation of 42 U.S.C. § 1983, and that claim may continue.

---

[1] The motions have been referred to the undersigned, with consent of the parties, to conduct all proceedings and enter a final order on said motions in accordance with 28 U.S.C. § 636(c). (Dkt. No. 30.)

*Factual Background*

Taking the factual allegations in the petition as true and viewing them in the light most favorable to the nonmoving party, Plaintiffs allege as follows:

Individual plaintiff Brittany Lynn Tobey ("Brittany") and nonparty Billy Tobey ("Billy") are the biological parents of D.W.T. and T.J.T. (the "Children").[2] (Dkt. No. 17 ¶¶ 1, 4.) Defendant Dawneeia Marleen Tobey ("Dawn") is Billy's sister, while Marie C. Tobey[3] ("Marie") is Billy's sister-in-law. (*Id.* ¶¶ 4–5.) Defendant Tammy Lee ("Lee") is an employee of the Oklahoma Department of Human Services ("DHS"). (*Id.* ¶ 3.)

On March 1, 2022, Brittany filed for and received an emergency protective order against Billy for herself and the Children. (*Id.* ¶ 11.)

Also in March 2022, DHS had received a referral and was conducting an investigation regarding the Children. (*Id.* ¶ 7.) DHS assigned Lee to this investigation. (*Id.* ¶ 9.) On March 7, 2022, Brittany attended a meeting at DHS. (*Id.* ¶ 15.) Lee would later falsely claim that, during this meeting, Brittany had slurred speech and bloodshot eyes, and appeared under the influence. (*Id.*)

On March 8, 2022, Lee enlisted the assistance of the Owasso Police Department and arrived at Brittany's house. (*Id.* ¶ 6.) Dawn and Marie were aware that Lee was going to take the children from Brittany. (*Id.* ¶ 7.) There was no order to remove custody of the Children from Brittany, but Lee falsely told the police officer that the parties had a safety

---

[2] Due to the numerous parties with the same last name, the Court will use first names for the Tobeys.

[3] The parties' filings variously refer to this defendant as Maria or Marie. The Court will use the name Marie to be consistent with the complaint.

plan agreement and that it had been violated.[4]  (*Id.* ¶¶ 7, 14.)  Lee then took the Children and gave them to Dawn, who was parked down the street.  (*Id.* ¶ 7.)  Dawn drove the Children to Marie.  (*Id.*)  Lee told Marie that DHS was going to remove the children and for her to file a guardianship action.[5]  (*Id.* ¶ 10.)

A week later, Marie filed a case in Rogers County, seeking guardianship of the Children.  (*Id.*)  In that case, Marie falsely asserted that the children were in DHS care and DHS had placed the children with her.  (*Id.*)  Marie obtained emergency custody of the Children, although the Children split time between Marie and Dawn's homes.  (*Id.* ¶¶ 10–11.)  On January 20, 2023, a state judge dismissed Marie's guardianship case, finding Marie has not met her burden of proving that Brittany was affirmatively unfit.  (*Id.* ¶ 13.)

### *Procedural Background*

Plaintiffs originally filed this action in state court on January 21, 2025 (Dkt. No. 2-2) and, after removal, filed an amended complaint (Dkt. No. 17).  As relevant here,[6] Brittany asserts the following claims on behalf of herself, individually and against Defendants Dawn and Lee:  (1) interference with a child custody order under Okla. Stat. tit. 43, § 111.2, i.e., "child stealing"; (2) civil conspiracy under state law; and (3) conspiracy to commit malicious prosecution under 42 U.S.C. § 1983.  (*Id.* ¶¶ 17–26, 33–41.)  Britanny

---

[4] The Court rejects Defendant Lee's assertion that "Plaintiff admits that a child-centered safety plan was put in place in response to this investigation."  (Dkt. No. 21 at 5.)

[5] The complaint is not particularly clear on this point, stating, "In fact, Marie testified that Lee had told her that DHS was going to remove the children, and to file the guardianship." (*Id.* ¶ 10.)  Resolving all inferences in Plaintiffs' favor, the undersigned reads this allegation as stating that this testimony by Marie was true.

[6] Brittany has voluntarily dismissed her claims against the State of Oklahoma and Marie C. Tobey.  (Dkt. No. 34.)

3

also asserts, on behalf the Children, a § 1983 claim for their unreasonable seizure by Defendants Dawn and Lee. (*Id.* ¶¶ 27–32.) Defendants Dawn and Lee move to dismiss all claims against them.

## *Analysis*

### I. Standard of Review

To survive a 12(b)(6) motion to dismiss, "a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). All such reasonable inferences are resolved in the plaintiff's favor. *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013). But the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations and footnotes omitted); *see also Papasan v. Allain,* 478 U.S. 265, 286 (1986) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation"), *quoted in Twombly*, 550 U.S. at 555. This is a "low bar." *Griffith v. El Paso Cnty.*, 129 F.4th 790, 815 (10th Cir. 2025).

A statute of limitations defense, meanwhile, is an affirmative defense that must be raised by the defendant and often requires a resolution of factual disputes that cannot occur at the Rule 12 stage. *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022). Instead, such defense may be resolved on a Rule 12(b) motion only "when the dates given in the complaint make clear that the right sued upon has been extinguished."

4

*Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016) (internal quotations omitted).

## II. Brittany Fails to State a Claim for Child Stealing

Brittany's claim under the child-stealing statute fails where she does not allege a court order establishing a right to custody entered in a child custody proceeding. Brittany asserts her first cause of action under the child-stealing statute, Okla. Stat. tit. 43, § 111.2. That statute reads,

> Any person who is not a party to a child custody proceeding, and who intentionally removes, causes the removal of, assists in the removal of, or detains any child under eighteen (18) years of age with intent to deny another person's right to custody of the child or visitation under an existing court order shall be liable in an action at law.

Brittany makes two arguments in support of application of this statute to the alleged facts: (1) no court order is required if "custody" is denied; and (2) if a court order is required, it is satisfied by the emergency protective order Brittany received on March 1, 2022. (Dkt. No. 35 at 14.[7]) Brittany's arguments are contrary to the plain language of the statute, as well as the structure of the broader statutes regarding custody and visitation.

### A. The Statute Requires a Court Order

Brittany's first argument is based on the language of the statute regarding any person "who intentionally removes . . . any child . . . with intent to deny another person's right to custody of the child or visitation under an existing court order . . . ." Okla. Stat. tit. 43, § 111.2. Brittany argues that, under the last antecedent rule, the phrase "under an existing court order" refers only to "visitation" and not to "custody of the child." (*Id.*) Brittany's argument violates both the canons of construction and basic rules of grammar.

---

[7] Page numbers refer to those in the court-provided header.

5

As for grammar, the prepositional phrase "under an existing court order" modifies the word "right," not the separate subordinate phrase "to . . . visitation." That is, the statute protects a "person's right . . . under an existing court order." What kind of right? The "right to custody of the child or visitation." Under the unambiguous text, the right interfered with must be a right under an existing court order. *See Bailey v. State ex rel. Serv. Okla.*, 2025 OK 34, ¶ 14, 572 P.3d 1026, 1031 ("Statutory interpretation begins, as it must, with the text of the statute.").

As for canons of construction, they also go against Brittany's position. The last antecedent rule—or as some commentators call it in this particular situation, the nearest-reasonable-referent canon—applies when "the syntax involves something other than a parallel series of nouns or verbs." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 152 (2012). Here, to the extent there are two prior nouns—"right to custody of the child" and "right to . . . visitation"—there is a straightforward, parallel construction that involves all the nouns in the series. In that instance, the postpositive modifier normally applies to the entire series. *Id.* at 147–48 (examples include a "wall or fence that is solid" or a "corporation or partnership registered in Delaware"). The Court therefore finds that the plain language of the statute requires either the "right to custody" or the "right to . . . visitation" to be "under an existing court order."

### B.   The Protective Order, as Pled, is Not an Applicable Court Order

Brittany next argues, if a court order is required, her emergency protective order against Billy is enough. (Dkt. No. 35 at 14.) This argument fails, because the protective order, as pled, does not relate to custody or visitation and it does not appear to have to have been entered in a child custody proceeding.

The only facts alleged in the complaint regarding the protective order are as follows:

> in Rogers County Case PO-2022-82 a protective order against Billy Tobey was filed by Plaintiff and granted. Specifically, this protective order was in existence and an emergency protective order was granted on March 1, 2022. This protective order included the children.

(Dkt. No. 17 ¶ 11.) There is nothing in this allegation indicating that the protective order established a "person's right to custody of the child or visitation" as required by the child-stealing statute. Okla. Stat. tit. 43, § 111.2

Moreover, the child-stealing statute appears to relate to a "child custody proceeding" that occurs within the context of divorce, annulment, or legal separation proceedings. The statute was enacted in 1995 as part of a law entitled "MARRIAGE AND FAMILY—CHILD STEALING—ALIMONY AND SUPPORT." 1995 Okla. Sess. Law Serv. ch. 219 (S.B. 289). It was slotted into a portion of the "Marriage" title that begins by listing the grounds for divorce; setting forth jurisdiction and venue for divorce actions; and the required pleadings. *See* Okla. Stat. tit. 43, §§ 101–106. The statutes then set forth special requirements for actions where a minor child is involved and the standards for awarding custody. *See, e.g., id.* §§ 107.1–109. After a petition has been filed for dissolution of marriage or legal separation, "either party may request the court to issue" temporary orders "regarding child custody, support or visitation" after a substantive hearing. *Id.* § 110(B). Violation of a child support or visitation order may be prosecuted as indirect civil contempt, with the recovery of attorney fees, costs, and expenses incurred in the denial of child support or visitation. *Id.* § 111.1. Next is a section on visitation schedules, and after that comes the section at issue in this case. In context, it logically extends the protection of the court's custody and visitation orders to persons not subject to the

7

contempt power, that is any "person who is not a party to a child custody proceeding" and "who intentionally removes . . . any child . . . with intent to deny another person's right to custody of the child or visitation under an existing court order," again providing for damages, expenses, and attorney fees. *Id.* § 111.2. Brittany does not allege an order regarding custody that was entered in this sort of "child custody proceeding."[8]

Brittany has failed to state a claim under the child-stealing statute.

### III. Brittany Fails to State a § 1983 Claim for Malicious Prosecution Conspiracy

Brittany alleges that Lee, Dawn, and Marie conspired together to maliciously prosecute her through a sham guardianship proceeding, violating 42 U.S.C. § 1983. (Dkt. No. 17 ¶¶ 33–38.)

The Tenth Circuit has recognized a § 1983 conspiracy claim, which involves "a conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law." *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022) (internal quotations omitted). To state such a claim, a plaintiff must "allege specific facts showing an agreement and concerted action among defendants, an agreement upon a common, unconstitutional goal, and concerted action taken to advance that goal." *Id.* (citation modified). "Because direct evidence of an agreement to join a conspiracy is rare, a defendant's assent can be inferred from acts furthering the conspiracy's purpose." *Id.* (citation modified). Even so, a plaintiff "must explain what each defendant did to him or

---

[8] Brittany's reference to the definition of "child custody proceeding" in the Uniform Child Custody Jurisdiction and Enforcement Act, Okla. Stat. tit. 43, §§ 551-101–551-112, does not alter this conclusion. First, the legislature explicitly provided in this later-enacted law that the definition applied "[i]n this act" and not generally to Title 43. *See id.* § 551-102. Second, even if the alleged protective order was in a "proceeding for . . . protection from domestic violence," Brittany has not alleged that it was "a proceeding in which legal custody . . . with respect to a child [was] an issue." *Id.* § 551-102(4).

8

her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007); <u>Midgley v. Alsip</u>, No. 20-CV-163-JFH-MTS, 2024 WL 3089654, at *2 (N.D. Okla. June 20, 2024) ("Even if concerted action is theoretically possible, a plaintiff must allege facts explaining how the concerted action came about." (citing *Shimomura v. Carlson*, 811 F.3d 349, 360 (10th Cir. 2015))).

Here, Brittany alleges that the unconstitutional goal was to maliciously prosecute her through the guardianship proceeding. (Dkt. No. 17 ¶¶ 33–38.) The parties agree that, to determine what constitutes a constitutional claim of malicious prosecution, the Court starts with state law. *See Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1244 (10th Cir. 2003). Under Oklahoma law, the elements of a malicious prosecution claim are—

> (1) the bringing of the original action by the defendant; (2) its successful termination in plaintiff's favor; (3) want of probable cause to join the plaintiff; (4) malice, and (5) damages.

*Young v. First State Bank*, 1981 OK 53, ¶ 5, 628 P.2d 707, 709.

Defendants do not dispute that the guardianship proceeding could, if properly alleged, form the basis of a § 1983 malicious prosecution claim. Instead, both defendants assert the claim fails, because they did not personally file the guardianship case. (Dkt. No. 21 at 9; Dkt. No. 23 at 8.) This ignores the nature of a § 1983 conspiracy. "Provided that there is an underlying constitutional deprivation, the conspiracy claim allows for imputed liability; a plaintiff may be able to impose liability on one defendant for the actions of another performed in the course of the conspiracy." *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990).

9

However, Brittany's allegation are missing the necessary factual allegations to allege the underlying constitutional deprivation—that is an agreement to deprive her of a constitutional right under color of state law. *See id.* ("A § 1983 conspiracy claim may arise when a private actor conspires with [a] state actor to deprive a person of a constitutional right under color of state law."). Brittany fails to allege any facts showing any agreement as to the guardianship proceeding by Lee, Dawn, and Marie. *See* <u>Marshall v. Dix</u>, 640 F. Supp. 3d 1033, 1065 (D. Colo. 2022) ("Mere conclusory assertions about the existence of a conspiratorial agreement are insufficient to state a claim." (internal quotations omitted)). At most, Brittany alleges that Lee told Marie she should file the guardianship proceeding. There are no allegations indicating that the parties agreed that a guardianship proceeding should be filed even if it lacked any probable cause or other basis for success, that the parties agreed Marie should lie when filing the proceeding, or that there was any agreement at all involving Dawn as to the proceeding. In fact, Brittany's allegations of conspiracy fail to include any factual allegations of Dawn's conduct in bringing the guardianship proceeding. *See Williams v. Dist. Nine Task Force*, No. CIV-05-777-C, 2006 WL 2850484, at *8 n.15 (W.D. Okla. Sept. 29, 2006) (where the plaintiff asserted "no allegations whatsoever" against certain named defendants, the plaintiff failed to state a § 1983 claim against those defendants). Brittany has therefore failed to state a claim under § 1983 for malicious prosecution conspiracy.

IV. **Brittany Fails to State a Claim for Civil Conspiracy under State Law**

As alleged in the complaint, only Brittany is bringing a state-law claim for civil conspiracy. (Dkt. No. 17 at 7.) Under Oklahoma law, "[a] civil conspiracy consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means." *Brock v. Thompson*, 1997 OK 127, ¶ 39, 948 P.2d 279, 294 (Okla. 1997). To state

10

such a claim, the plaintiff must allege "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Schovanec v. Archdiocese of Okla. City*, 2008 OK 70, ¶ 46, 188 P.3d 158, 175 (internal quotation omitted).

As noted above, Brittany has failed to state a claim for child stealing and has failed to allege that Lee and Dawn were part of a conspiracy to maliciously prosecute her. In the briefing, Brittany also argues that the unlawful seizure of her children can form the basis of her conspiracy claim. (Dkt. No. 35 at 21; Dkt. No. 36 at 12.) However, as noted below, this claim belongs to the Children, not her. Without an underlying wrongful act, Brittany has failed to state a claim for civil conspiracy. *See* <u>AKC ex rel. Carroll v. Lawton Indep. Sch. Dist. No. 8</u>, 9 F. Supp. 3d 1240, 1245 (W.D. Okla. 2014) ("[I]n order for a civil conspiracy claim to lie, it must be based on an underlying tort.").

## V. The Children Have Stated a Viable Claim for Unlawful Seizure Against Lee, but Not Dawn

Defendants Lee and Dawn make various attacks on the unlawful seizure claim, many of which depend on facts not alleged in the complaint. Restricted as the Court is by the facts alleged, the undersigned finds the Children have stated a claim for unlawful seizure against Lee, but they have not stated a conspiracy claim against Dawn.

### A. The Children Have Alleged Unlawful Seizure by Lee

The Children have adequately alleged that they were subject to seizure in violation of the Fourth Amendment. "The Fourth Amendment, applied to the states through the Fourteenth Amendment's Due Process Clause, provides that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" *Roska*, 328 F.3d at 1240 (quoting U.S. Const. amend IV).

11

A Fourth Amendment seizure "clearly" occurs when a child is removed from their home by a state actor. *Id.* at 1238 ("Morrison and Sneddon, accompanied by a police officer, allegedly entered the Roska residence . . . and proceeded to remove Rusty"); *id.* at 1244 ("Defendants clearly seized Rusty within the meaning of the Fourth Amendment"). If such seizure is done "without a warrant and without exigent circumstances," it violates a child's "right to be free from unreasonable seizures." *Id.*

The Children allege that they were at their residence with their mother when Lee, a state DHS employee, arrived with an Owasso police officer and removed them from the home. They further allege that there was no court order and that Lee lied about the existence of a safety plan allowing for their removal.[9] The facts as alleged in the complaint show no exigent circumstances. Contrary to Lee's arguments, these are allegations of specific facts that, if true, would establish an unconstitutional seizure under color of state law. The Children have stated a claim against Lee under 42 U.S.C. § 1983.

### B.   The Children Have Failed to Allege a Conspiracy Between Lee and Dawn

As for Dawn, the Children have failed to plausibly allege a § 1983 conspiracy. Dawn argues that the complaint's conclusory allegations fail to show any acts under color of law. (Dkt. No. 23 at 6–7.) The Children respond that Dawn is liable under § 1983 for joint or conspiratorial actions. (Dkt. No. 36 at 8.) As noted above, a private actor like Dawn can be subject to a § 1983 action if she conspires with a state actor to deprive someone of their

---

[9] Because the Court considers only the factual allegations in the complaint and treats them as true, it cannot countenance Lee's statements that a safety plan was in place or that Marie was designated as a safety plan monitor. (*See* Dkt. No. 21 at 2.) Nor can the Court assume that Lee was a social worker who simply made a mistake of judgment under complex and difficult conditions. (*See id.* at 8 (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 211 (1989) (Brennan, J., dissenting)).)

constitutional rights. *Dixon*, 898 F.2d at 1449 n.6. Still the plaintiff must allege specific facts showing an agreement on the unconstitutional goal and concerted action to advance the goal. *Bledsoe*, 53 F.4th at 609 (noting that assent can be inferred from acts furthering the conspiracy's purpose).

Here, though, the allegations are too bare to push the claim of conspiracy from merely possible to plausible. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)). The Children allege that Dawn knew in advance that DHS employee Lee was intending to remove the children from Brittany's home, that Dawn was waiting down the street during the removal, and that Dawn then transported the children to Marie. The Children do not allege that Dawn knew that Lee intended to remove the children without a court order and while falsely stating there was a safety plan in place that had been violated. They do not even allege that Dawn knew about Brittany's emergency protective order against Billy or any other potential motive on Dawn's part to engage in an unlawful seizure of the Children.[10] At best, the Children allege actions that would be expected in any situation where a child was going to be removed from one home and placed with a relative. This may also be consistent with the Children's conspiracy theory, but it does not cross the line from possibility to plausibility of entitlement to relief. *See also Twombly*, 550 U.S. at 557 ("The need at the pleading stage for allegations plausibly suggesting (not merely

---

[10] Again, the Court does not credit Dawn's arguments based on facts not in the record, such as that she was directed by the Owasso Police Department to park down the street, that each of the defendants acted in a manner intended to provide for the Children's safety and security, that no one in the state court case ever alleged she was privy to certain information, or that DHS would have placed the children with another relative or in foster care if Dawn had not agreed to pick them up. (Dkt. No. 23 at 2, 7.)

13

consistent with) [an illegal] agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" (quoting Fed. R. Civ. 8(a)(2)). The Children have failed to state a § 1983 claim against Dawn.

### C. Lee's Other Arguments Against the § 1983 Claim Also Fail

Having found that the Children have stated a § 1983 claim against Lee, the Court must consider Lee's arguments that such claim is barred by the statute of limitations or that Lee has qualified immunity against the claim as alleged.

#### 1. Lee Fails to Show a Running of the Statute of Limitations

Lee fails to show that the dates in the complaint make it clear that the Children's right to sue has been extinguished by the statute of limitations. The parties agree that the limitations period applicable to a § 1983 claim is two years. *See Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005). It is also undisputed that the alleged seizure took place on March 7, 2022, while this lawsuit was commenced well over two years later, on January 21, 2025. Based on this, Lee argues the statute of limitation has run. (Dkt. No. 21 at 3–4.) The Children respond that their claims are tolled by state law during their minority. (Dkt. No. 35 at 10.) Lee chose not to file a reply and did not respond to this argument.

The Court agrees with the Children. "Congress did not establish a statute of limitations or a body of tolling rules applicable to actions brought in federal court under § 1983—a void which is commonplace in federal statutory law." *Alexander v. Oklahoma*, 382 F.3d 1206, 1217 (10th Cir. 2004) (quoting *Board of Regents v. Tomanio*, 446 U.S. 478, 483 (1980)). As a result, state law governs the application of tolling in a civil rights action so long as it is not inconsistent with federal law. *Hardin v. Straub*, 490 U.S. 536,

14

539–41 (1989) (applying state tolling statute for persons "under 18 years of age, insane, or imprisoned at the time the claim accrues"). In Oklahoma,

> If a person entitled to bring an action . . . be, at the time the cause of action accrued, under any legal disability, every such person shall be entitled to bring such action within one (1) year after such disability shall be removed . . . .

Okla. Stat. tit. 12, § 96. "Minority is a sufficient disability to justify the tolling of the . . . statute of limitations." *Hamilton ex rel. Hamilton v. Vaden*, 1986 OK 36, ¶ 10, 721 P.2d 412, 415–16. As such, the minor's right to sue "may be exercised by the guardian at any time during their minority or by themselves after they have attained their majority, within the time granted under the saving clause of the statute." *Freeman v. Alex Brown & Sons, Inc.*, 73 F.3d 279, 282 (10th Cir. 1996) (quoting *Ischomer v. Fryer*, 231 P. 298, 299 (1924)).

The Amended Complaint alleges that both children are minors. (Dkt. No. 17 ¶ 4.) Therefore, they are entitled to bring any cause of action within one year of their obtaining the age of majority. *See Alexander*, 382 F.3d at 1217 ("Oklahoma courts have applied [section 96] only for plaintiffs whose competency is impaired or who have not reached the age of majority"). The question then becomes whether the claim belongs to the Children or to their guardian. *Freeman*, 73 F.3d at 282. Here, the seizure claims belong to the Children. *See Roska*, 328 F.3d at 1244; *see also Lowther v. Child. Youth & Fam. Dep't*, 101 F.4th 742, 754 n.6 (10th Cir. 2024) ("The Fourth Amendment claims [for removal of the children] can be asserted only by the children because Fourth Amendment rights are personal and cannot be asserted vicariously."). There is no indication in the complaint that the Children reached the age of majority a year before the lawsuit was filed. Lee has failed to show that their claims are barred by the statute of limitations.

### 2. Defendant Lee is Not Entitled to Qualified Immunity under the Facts Alleged in the Complaint

Finally, qualified immunity does not protect Lee under the facts as alleged in the complaint. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). When a defendant like Lee "raises a qualified immunity defense, the court must dismiss the action unless the plaintiff shows that (1) the defendant violated a statutory or constitutional right, and (2) the right was clearly established at the time of the violation." *White v. Lucero*, 135 F.4th 1213, 1218 (10th Cir. 2025) (internal quotations omitted). If the plaintiff fails to satisfy either prong, the defendant is entitled to dismissal. *Id.*

Here, under the facts alleged, the Children have established both prongs. First, as set forth in section V(A) above, the Children have alleged facts showing Lee seized them without a court order or exigent circumstances. This is a violation of their Fourth Amendment right to be free from unreasonable seizures. *See Roska*, 328 F.3d at 1244. The nature of the violation was clearly established in a case with fundamentally similar facts before that seizure—again *see Roska*. Moreover, even at the time of *Roska*, over 20 years ago, the Tenth Circuit would not find that "a reasonable state actor could conclude that the Fourth Amendment allowed a . . . seizure of a child absent something approaching probable cause to believe that: (1) the child's health or safety was at risk, and (2) this risk was due to the child's presence in the home." *Id.* at 1249–50 (but noting in the case before it, there <u>was</u> substantial cause to believe the child's presence in the home was a danger to that child). Lee is not entitled to qualified immunity at this stage.

16

*Conclusion*

Brittany has failed, in her personal capacity, to state any claims against Lee and Dawn. In her representative capacity on behalf of the Children, she has stated a claim against Lee that is not otherwise barred by the statute of limitations or subject to qualified immunity. She has not pled any claims on behalf of the Children against Dawn.

IT IS THEREFORE ORDERED that *Defendant Tammy Lee's Motion to Dismiss Plaintiff's First Amended Complaint* (Dkt. No. 21) is GRANTED IN PART and DENIED IN PART and *Defendant Dawneeia Marleen Tobey's Motion to Dismiss Plaintiffs' First Amended Complaint* (Dkt. No. 23) is GRANTED. All of the claims against Defendant Dawneeia Marleen Tobey are DISMISSED WITHOUT PREJUDICE. Plaintiff Brittany Lynn Tobey's personal claims against Defendant Tammy Lee are also DISMISSED WITHOUT PREJUDICE.

The following claims remains in the case: the claims of Plaintiff Brittany Lynn Tobey on behalf of D.W.T. and T.J.T. against Defendant Tammy Lee for unreasonable seizure in violation of 42 U.S.C. § 1983.

ORDERED this 7th day of February, 2026.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT